**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **HAY HUY PHAN,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-1388-KC** |
| | § | |
| **TODD M. LYONS et al.,** | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

On this day, the Court considered Hay Huy Phan's Petition for a Writ of Habeas Corpus,
ECF No. 3.

## I.    BACKGROUND

### A.    Arrival in the United States & Immigration Proceedings

Phan entered the United States in 1982 as a refugee. *Id.* ¶ 11.  On an unknown date, he
was ordered removed from the country but was released under supervision in 2009. *Id.* ¶¶ 13–
14.  Phan states he complied with all conditions of his supervision but was nevertheless re-
detained about four months ago, on February 5, 2026. *Id.* ¶¶ 11, 13.  Phan claims that
Respondents cannot obtain travel documents to Vietnam "any time soon." *Id.* ¶¶ 11, 14.

Phan remains detained at the El Paso Service Processing Center in El Paso, Texas. *Id.* ¶
2.  He argues that his detention is unlawful and asks the Court to order his release. *Id.* ¶¶ 13–15.

### B.    Procedural History

On May 15, 2026, Phan filed his Petition. *Id.*  On May 18, 2026, the Court ordered
Respondents to show cause why the application for a writ of habeas corpus should not be
granted.  May 18, 2026, Order 2, ECF No. 2.  Respondents were to specify: the circumstances

that make Phan's removal likely, what concrete steps and obstacles remain to effectuate removal, and the anticipated timeline for completion.  *Id.* at 2–3.

In answer to the Court's Show Cause Order, Respondents argue that Phan's removal is "significantly likely in the reasonably foreseeable future."  Resp. 2, ECF No. 6.  In terms of removal efforts, Respondents stated that Phan's travel document request was submitted to "ICE ERO Headquarters (HQ), Vietnam-Removal International Operations (RIO)."  Resp. Ex. E ("Arroyo Decl.") ¶ 8, ECF No. 6-5.  Then, on April 29, May 13, and May 27, ERO El Paso emailed Vietnam RIO and DDO requesting an update on the status of Phan's travel document request.  *Id.* ¶¶ 9–11.  To date, Respondents have not received any internal update.  *See id.*  Thus, it is unclear whether any travel document request has been submitted to Vietnam.  *See generally id.*  And the timeline for Phan's removal "is currently unknown."  *Id.* ¶ 14.

## II.    ANALYSIS

Phan seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates the Due Process Clause of the Fifth Amendment.  Pet. ¶¶ 13–15.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim.  *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)).  By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim.  *See id*.  In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ").

2

*See id.* at \*5–8.  The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future.  *See id.*  Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees.  *See id.* at \*7.  Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him.  *See id.* at \*1, 4, 8.

Here, Phan has been detained for just over four months and it is unclear whether Respondents have even submitted a travel document request to Vietnam.  *See generally* Arroyo Decl.  And they still cannot provide an expected timeline for Phan's removal.  Whereas in *Nguyen*, Respondents at least offered statistics on removal and confirmed that they had submitted a travel document request, here Respondents have done neither.  Since Phan's release from prison over a decade ago, he could not be removed to Vietnam.  In the last four months that Phan has been detained, it appears that Respondents may not have even internally approved Phan's travel document request.  *See id.* ¶¶ 8–11.  Respondents have identified no other country, and have no expected removal date.  In short, Phan's removal was not possible before, does not seem to be possible now, and "Respondents have not shown that [his] removal is significantly likely to occur in the reasonably foreseeable future."  *See Nguyen*, 2025 WL 3120516, at \*7 (citations omitted).

3

Thus, at this time, Respondents' interest in effectuating Phan's removal order is weak. *See id.* at *7–8.  And any interest in preventing flight or danger is similarly weak, as Phan was previously released on an OSUP and there is no evidence in the record that he presents a flight risk or committed any crimes or endangered anyone since his release.  *See id.* at *6.  The Government's interest in re-detaining Phan is thus outweighed by his strong liberty interest from his many years of freedom in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing.  *See id.* at *5–6.

While there is no doubt that Phan is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they have essentially failed to take any action to effectuate that removal, they cannot continue to detain Phan without providing him with an individualized custody determination.

## III.    CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 3, is **GRANTED IN PART**.  The Court **ORDERS** that, **on or before June 11, 2026**, Respondents shall either: (1) provide Phan with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Phan's continued detention; or (2) release Phan from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before June 11, 2026**, Respondents shall **FILE** notice informing the Court whether Phan has been released from custody.  If Phan has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Phan is released from custody, Respondents shall **RETURN** all of his personal property in their custody to him upon release. Such property includes, but is not limited to, identification documents.

**There will be no extensions of the June 11, 2026, deadlines**, unless they fall on a weekend or holiday, in which case, the deadlines are extended to the following business day.

**SO ORDERED**.

**SIGNED** this 4th day of June, 2026.

_____
KATHLEEN  CARDONE
UNITED STATES DISTRICT JUDGE